# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WISCONSIN CENTRAL LTD.,

    Plaintiff,

v.                                                                   Case No. 09-CV-966

ACUITY, A MUTUAL INSURANCE COMPANY,

    Defendant.

## ORDER

On June 30, 2010, plaintiff Wisconsin Central Ltd. ("WCL") filed a Motion for Summary Judgment (Docket #11) requesting judgment in its favor on the counterclaims asserted by defendant Acuity, A Mutual Insurance Company ("Acuity"). The case involves the collision of a dump truck and a train at a railroad crossing. WCL has sued Acuity, insurer of the truck driver, for negligence, seeking recovery for alleged property damage. Along with its answer, Acuity counterclaimed for negligence, asserting that WCL was negligent both in keeping the area surrounding the intersection clear of brush and trees and for failing to improve traffic control at the crossing. In the instant motion, WCL seeks only judgment on Acuity's counterclaims. In its responsive brief, Acuity concedes that WCL is entitled to judgment as to negligence concerning brush and tree upkeep. Therefore, the court will grant the motion as to that claim but, pursuant to the following discussion, the court will deny the motion as to traffic control at the crossing because there remains a genuine dispute of material fact.

**BACKGROUND**

The case arises out of a collision between a dump truck and a WCL train at the intersection of Old Highway 101 in Armstrong Creek, Wisconsin, and railroad tracks owned by WCL (the "Armstrong Creek crossing"). (Pl.'s Proposed Findings of Fact [hereinafter PPFOF] ¶¶ 1-2) (Docket #13).[1] Warning devices at the crossing consisted of only a reflectorized crossbuck on each side of the track.[2] (PPFOF ¶ 9). WCL installed the crossbucks pursuant to an order of the Office of the Commissioner of Railroads of the State of Wisconsin ("OCR"), entered June 30, 1999. (PPFOF ¶ 10); (Aff. of Jackie Macewicz ¶ 3 & Ex. 1, at 5) (Docket #11-3). The order began with a finding that 2,700 "at-grade" crossings in Wisconsin had only passive warning devices, that is, no automatic flashing lights, and that the state-wide project would upgrade warning devices at all passive crossings. (Aff. of Jackie Macewicz Ex. 1, at 1). The order then specified that it was directed to WCL, but that further orders directed to each railroad would be issued separately. (*Id.* at 2). The OCR found that "in order to adequately protect and promote public safety at the passive crossings of the tracks of [WCL] in the State of Wisconsin, it is necessary to install and maintain retroreflective crossbucks." (*Id.* at 4). Thus, the OCR ordered that WCL install and maintain the crossbucks at "all of the crossings of its tracks that

---

[1]Where Acuity has not disputed a fact proposed in WCL's submission, the court cites directly to WCL's proposed findings.

[2]A crossbuck is a sign with two slats crossed in an "x" configuration, one reading "railroad" and the other reading "crossing." Wis. Dep't of Transp., *Rail Crossing Warning Signs and Devices* (last modified 1/29/07), http://www.dot.wisconsin.gov/safety/motorist/railcrossings/warning.htm.

presently have only passive warning devices in the state of Wisconsin." (*Id.*). In so doing, the OCR concluded that it had jurisdiction to enter the order pursuant to Wisconsin Statutes § 195.28. (*Id.*). In its order, the OCR also stated that "[i]t should be noted, however, that the OCR has not conducted an investigation of each specific crossing, but is instead providing materials . . . for a system-wide upgrade in warning devices at passive crossings." (*Id.*).

## LEGAL STANDARD

Summary judgment is to be rendered where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material where it may change the legal outcome, and a dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 822 (7th Cir. 2010). However, where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine dispute as to any material fact because a complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on the motion, the court "must construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Spivey*, 622 F.3d at 822.

## ANALYSIS

There remains a genuine dispute of material fact regarding whether WCL was negligent in failing to improve traffic control at the Armstrong Creek crossing,

therefore, the court will deny summary judgment as to that claim. In relevant part, Wisconsin statute provides:

> Upon petition . . . to determine whether a public highway and railroad grade crossing protects and promotes public safety, the [OCR] may investigate and issue an appropriate order without a public hearing. . . . The office shall determine whether the existing warning devices at such crossing are adequate to protect and promote public safety. If the office determines, either without or after a hearing, that protection is not adequate, it may order the railroad company or railroad historical society to keep a flagman at the crossing or to install automatic signals or other suitable safety device at specific locations at such crossing. . . . Any crossing protection installed or maintained as approved by the [OCR], whether by order or otherwise, shall be deemed adequate and appropriate protection for the crossing.

Wis. Stat. § 195.28(1). WCL asserts that it is entitled to judgment as a matter of law regarding Acuity's second claim for negligence because the order of the OCR constitutes an exclusive determination of the adequacy of the warning devices at the Armstrong Creek crossing. Thus, WCL argues that not only does the OCR order remove the adequacy of the warnings from dispute, but it also constitutes a finding of adequacy sufficient to award judgment as a matter of law that WCL could not have been negligent. WCL hangs its argument on the final sentence of the statutory provision, arguing that the OCR approved the installation of the crossbuck at the Armstrong Creek crossing and, therefore, it should be deemed adequate protection. Acuity responds that because the OCR never specifically reviewed the Armstrong Creek crossing and made an individual determination on the adequacy of protection, the crossbuck installed and maintained by order cannot be found adequate protection as a matter of law.

Clearly, the fact of adequate protection is material to the claim of negligence. Thus, the court need only decide whether a genuine dispute exists, and it does so find. Unfortunately, there is no guiding Wisconsin case law on the issue raised.[3] In deciding an issue of state law while sitting in diversity, without the benefit of state court guidance, the Seventh Circuit has cautioned district courts "to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state." *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997).

The language of the provision as it currently stands is the product of a 1975 amendment. 1975 Wis. Sess. Laws ch. 135. That amendment added the sentence at issue today regarding adequacy. *Id.* Prior to amendment, Wisconsin common law provided that action by the OCR could indeed immunize a railroad from negligence liability, but only where the OCR specifically issued an order directing and requiring installation of protection devices, such order being "based on a review of the public safety requirements of the particular crossing." *Gamble-Skogmos, Inc. v. Chi. & Nw. Transp. Co.*, 238 N.W.2d 744, 747-78 (Wis. 1976) (deciding liability for an accident that occurred in 1972, pre-amendment). At that time, according to the Wisconsin Supreme Court, authorization or approval of protective devices was insufficient to immunize a railroad without a direct order. *Id.* As can be seen from the amendment, the Wisconsin Legislature sought to expand immunity by declaring

---

[3] The court notes that this might be an ideal situation in which to certify a question to the Wisconsin Supreme Court, but Wisconsin statute does not permit the state's highest court to consider certified questions unless posed by the U.S. Supreme Court, a federal appellate court, or the highest appellate court of another state. Wis. Stat. § 821.01.

that any protection device installed "as approved by the [OCR], whether by order or otherwise," was a legally controlling determination of adequacy. 1975 Wis. Sess. Laws ch. 135. Thus, an order is no longer necessary to invoke immunity, only approval.

What is not immediately clear, however, is whether the 1975 amendment disturbed the common-law requirement that the OCR make a review of the safety requirements at a particular crossing before approval and the rise of immunity. The importance of that question is paramount where, as here, the OCR has expressed approval of protection devices by way of a state-wide order to upgrade crossbucks without any individualized determinations as to the adequacy of crossbucks alone at particular crossings. While the OCR, in its order, invokes the jurisdiction of the statutory provision in question, and asserts a finding that retroreflective crossbucks are necessary for the adequate protection and promotion of public safety, it is ultimately up to the judiciary to determine whether such an order is sufficient under the law to grant immunity to WCL.

Aside from the amended statutory language, two additional resources are of assistance. First, further Wisconsin case law provides some guidance. Though pre-amendment, the Wisconsin Supreme Court wrote that "[b]y giving the [OCR] jurisdiction over the field the legislature did not abolish the common law duty of the railroad to take such additional precautions as the exercise of due care required until such time as the commission might exercise its jurisdiction over a *particular crossing*." *Schulz v. Chi., M., St. P. & P. Ry. Co.*, 51 N.W.2d 542, 545 (Wis. 1952)

(emphasis added). The *Schulz* court, prior to the statute's amendment, expressed its opinion in a general form; that is, the OCR must first exercise its jurisdiction, and second must exercise that jurisdiction over a particular crossing. Prior to amendment, that jurisdiction only provided for issuing an order.[4] Hence, in *Gamble*, where there was no order issued, there was no exercise of jurisdiction, and thus no immunity from liability. The 1975 amendment, in turn, merely widened the scope and effect of the OCR's jurisdiction by allowing the OCR to approve protection devices without an order, and for that approval to similarly constitute legally adequate protection. The amendment did not alter the fundamental call of the Wisconsin Supreme Court that jurisdiction must be exercised over a particular crossing.

This reading is bolstered by a subsequent, though still pre-amendment, ruling by the Wisconsin Supreme Court. There, the court again reiterated that the OCR "must exercise its jurisdiction and make an order *based upon the safety requirements of the crossing*; the approval of plans . . . without more is not enough." *Kurz v. Chi., M., St. P. & P. R. Co.*, 192 N.W.2d 97, 103 (Wis. 1971) (emphasis added). Clearly, the 1975 amendment repudiated the latter part of the *Kurz* court's pronouncement, but there is nothing persuasive to indicate that it removed the requirement that the OCR direct its jurisdiction toward a particular crossing, or make

---

[4] While the OCR was not previously foreclosed from "approving" of devices, such action had no legal effect.

a specific consideration the basis of its exercise.[5]  While one could argue that the OCR here exercised its jurisdiction over 2,700 "particular" crossings in the state, it would stretch the bounds of the meaning inherent to the word "particular"; especially in light of the fact that these 2,700 "particular" crossings constitute *all* passive crossings in the state.  Such interpretation is not reasonable.

The second source of assistance is an Illinois Supreme Court decision interpreting a similar statute.  Under Illinois statute, the Illinois Commerce Commission has the

> power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate [protective devices] in order to promote and safeguard the health and safety of the public.  Luminous flashing signal or crossing gate devices installed at grade crossings, which have been approved by the Commission, shall be deemed adequate and appropriate.

625 Ill. Comp. Stat. 5/18c-7401.  In analyzing the statute, the Illinois Supreme Court noted that "once the Commission has investigated a crossing and approved" the protection devices, immunity attaches.  *Espinoza v. Elgin, Joliet & E. Ry. Co.*, 649 N.E.2d 1323, 1329-30 (Ill. 1995).  The court continued, stating that "[b]y its plain language it applies to any Commission investigation and approval."  *Id.* at 1330.

---

[5]WCL also cites to an unpublished appellate court decision, but this court may not consider it because the rules of Wisconsin appellate procedure prohibit the citation of unpublished appellate opinions for precedent or authority.  Wis. Stat. § 809.23(3); *see also City of Sheboygan v. Nytsch*, 2008 WI 64, ¶ 5, 310 Wis. 2d 337, 339-40, 750 N.W.2d 475 (Wisconsin appellate court improperly analyzed an unpublished decision, implicitly acknowledging persuasive authority in contravention of procedural rule); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (purpose of *Erie* doctrine is to reach substantially same outcome as State court).  This is unfortunate, given it is the only post-amendment Wisconsin state case the court could find that applies the rule in question.

Thus, despite a provision that references only approval, this analysis also implicitly recognizes some form of particularized consideration.

Based on the substance of the 1975 amendment, the reasoning of the Wisconsin Supreme Court, and bolstered by persuasive comments from the Illinois Supreme Court, this court finds that immunity has not attached on the basis of the OCR's order. Pre-amendment, the *Gamble* court interpreted a substantially identical provision that lacked only the widened notion of adequacy by OCR approval of protection devices, rather than by order alone. The amendment, in light of the common law up to that point, was aimed at redressing situations in which the OCR had effectively determined that a given protection device was adequate, but had not done so by formal order. The legislature's addition of the term "approved" in the 1975 amendment was in response to situations where railroads had approached the OCR for its blessing regarding safety mechanisms. *See Gamble*, 238 N.W.2d at 774 (affirming trial court's finding of lack of immunity where the order "was an approval of plans for signals proposed by the railroad"); *Kurz*, 192 N.W.2d at 102 (signals in question were approved "as requested by the railroad," but not subject to an order); *c.f. Verrette v. Chi. & N. W. Ry. Co.*, 161 N.W.2d 264, 267-69 (Wis. 1968) (finding an order, *requested by the city*, approving warning devices sufficient where it conclusively asserted the adequacy of the devices). In some cases, the OCR had simply given the go-ahead, eschewing an order. Thus, the legislature sought to clarify that such a specific approval was also intended to bestow immunity from liability. That situation is distinguished from the action taken by OCR in this case

where the intent of the order is obviously to increase the quality and safety of existing mechanisms, but not necessarily to grant blind approval to all passive crossings in the state.

Moreover, aside from adding language, the legislature left intact the preceding language, that is, that: the OCR may "determine whether a public highway and railroad grade crossing" is safe; that the OCR must determine whether devices "at such crossing" are adequate; and that if protection is not adequate, the OCR may order suitable devices "at such crossing." This language contemplates the OCR taking action upon particular crossings, and the *Gamble* court so interpreted it in requiring that the order be based upon review of safety at that "particular crossing." Though WCL argues that *Gamble* has no application here because it was pre-amendment, the 1975 amendment did not alter this language.[6] To read the "any crossing protection" language to override that requirement would divorce the sentence from the context of the rest of the provision. In fact, to do so would extend blanket immunity on every passive crossing in the state of Wisconsin, such were the

---

[6]WCL asserts that the amendment expanded immunity by eliminating any requirement that the OCR consider a particular crossing, but it offers no support for this proposition beyond the language, with which reading the court disagrees. WCL raises a U.S. Supreme Court case as analogous because the Court ruled that an assertion of inadequacy was preempted by Federal Highway Administration ("FHWA") approval, despite the fact that the FHWA had not performed any particularized analysis of the 196 crossings involved. *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 355-56 (2000). That case has no application here because it dealt with whether federal law preempted state law, thus providing the determination of adequacy. Here, the court's task is to interpret a state statute. In *Norfolk*, the Court did indeed interpret a regulation to determine whether particularized assessment was required, but that regulation was read in light of prior Supreme Court precedent regarding the regulation, as well as the FHWA's prior interpretation and administration of the regulation. Here, the court is interpreting a Wisconsin statute in light of state case law and legislative intent. The interpretive process is similar, but the Court's reasoning in *Norfolk* has nothing to do with any conclusion drawn here.

subjects of the order here, simply because the OCR attempted to implement uniform upgrades. It is unlikely that was the intent of the legislature in making the 1975 amendment. In fact, it is unlikely that was the intent of the OCR in issuing its order. The OCR made a point to specifically state that it had not conducted an investigation of each crossing but rather was implementing a system-wide upgrade. Additionally, the language of the order itself notes that installation of the crossbucks was "necessary" for the adequate protection of the public – not sufficient. Thus, the court cannot read the order to grant immunity in this case.

To be clear, the court does not hold that the OCR must necessarily make a particularized analysis of each crossing in order for immunity to arise. For example, it is conceivable that immunity could attach where a railroad company approached the OCR about installing a device at a crossing and the OCR gave its approval without first analyzing the crossing in any fashion. But that question is not before this court. Where no crossing has been specifically considered, the railroad company did not prompt the installation, and the purpose of the installation is for a system-wide upgrade – with an explicit note that the OCR has not conducted any specific investigations – immunity does not attach. After careful consideration, the court does not believe this decision to be one that will expand state law beyond the boundaries of current jurisprudence, as warned by the Seventh Circuit. The 1975 amendment expanded the scope of immunity available through OCR action, and this decision serves to limit immunity only in an extremely narrow case, one in which the question remains open whether the OCR may circumvent that limit through slightly

more specific conduct. In fact, it is the court's position that to hold the other way, in favor of blanket immunity through a system-wide upgrade order, would effect a much larger expansion of state law jurisprudence. Thus, in light of the statutory language, case law, and the intent of the Wisconsin legislature, with an eye toward restraint, the court holds that, under the current circumstances, immunity from liability does not attach and, thus, there remains a genuine dispute as to the material fact of adequacy of warning devices at the crossing. Therefore, the court will deny WCL's motion as to that aspect of the counterclaim. Further, as previously noted, Acuity has conceded that WCL is entitled to judgment on the claim of negligence for failure to properly upkeep nearby brush and trees.

Accordingly,

**IT IS ORDERED** that the plaintiff's Motion for Summary Judgment (Docket #11) be and the same is hereby **GRANTED in part** and **DENIED in part**; the plaintiff's motion for summary judgment as to the defendant's claim that the plaintiff was negligent in failing to keep its right of way clear of brush or trees is **GRANTED**; the plaintiff's motion for summary judgment as to the defendant's claim that the plaintiff was negligent in failing to improve traffic control at the crossing is **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of January, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge